UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON

| | |
|---|---|
| DERRICK FREEMAN, | |
| Petitioner, | Civil Action No. 5:10-00328-KSF |
| v. | |
| DEBORAH A. HICKEY, *Warden*, | **MEMORANDUM OPINION AND ORDER** |
| Respondent. | |

\*\*\*\*\*   \*\*\*\*\*   \*\*\*\*\*   \*\*\*\*\*

Derrick Freeman, who lists his current address as P.O. Box 623, Lawndale, North Carolina, 28090, was formerly a prisoner in the custody of the Bureau of Prisons ("BOP"), listed as Register No. 21989-058. When he was confined in the Federal Medical Center located in Lexington, Kentucky ("FMC-Lexington"), Freeman filed the instant *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging the manner in which the BOP had calculated the term of his federal sentence.

As Freeman has paid the $5.00 filing fee, the Court reviews the § 2241 petition to determine whether, from the face of the petition and any exhibits annexed to it, he is entitled to relief. *See* Rule 4, Rules Governing 28 U.S.C. § 2254 Cases (applicable to § 2241 petitions under Rule 1(b)); *see*, *e.g.*, *Patton v. Fenton*, 491 F.Supp. 156, 158-59 (M.D. Pa.1979); *see also* 28 U.S.C. § 2243. If it appears from the face of the § 2241 petition that relief is not warranted, the Court may summarily dismiss the petition. *See* 28 U.S.C. § 2243; *Blevins v. Lamanna*, 23 F. App'x 216, 218 (6th Cir. 2001); *Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970).

For the reasons set forth below, the Court has determined that although Freeman' claims are not moot, he is not entitled to relief. His § 2241 petition will be denied, his motion seeking a status report, [R. 8], will be denied as moot, and this action will be dismissed with prejudice.

## CLAIMS ASSERTED

Freeman alleged that the BOP improperly refused to credit his federal sentence with eight months of time which he spent in the custody of North Carolina state officials. This eight-month period ran between October 31, 2007, the date on which he was orally sentenced in federal court in North Carolina, and July 1, 2008, the date on which he was released to the custody of the United States Marshals' Service ("USMS") to begin serving his 40-month federal sentence.

Freeman argued that had the BOP properly credited his federal sentence with the eight months of pre-sentence credit between October 31, 2007, and July 1, 2008, the date of his projected release from BOP custody would have been moved forward eight months to September 17, 2010, instead of May 17, 2011. Freeman alleged that any time which he spent in the BOP's custody after September 17, 2010, constituted false imprisonment. Freeman's claims fall under the Due Process Clause of the Fifth Amendment of the United States Constitution.

## FREEMAN'S STATE AND FEDERAL CONVICTIONS

The following is a summary of Freeman's state and federal convictions, based on his § 2241 petition, the attached exhibits, information available through the Public Electronic Access to Public Records ("PACER") website, http://www.pacer.gov/, which compiles information concerning all criminal and civil actions filed in federal courts, and information publicly available through the BOP's official website, www.bop.gov.

(1)     **March 30, 2007**: Freeman was arrested in Rutherford County,

North Carolina, on the charges of: (a) Possession of Methamphetamine; (b) Possession with Intent to Distribute ("PWID") Cocaine; (c) Possession of Firearm by a Felon; (d) Altering Serial Numbers; (e) Simple Possession of a Schedule VI Controlled Substance; (f) Possession of Drug Paraphernalia; and (g) Resisting a Police Officer. *See* BOP's Designation & Sentence Computation Center's ("DSCC") July 28, 2008 Memorandum, [R. 2-3, p. 1].

(2) **April 3, 2007**: Freeman was indicted in the United States District Court for the Western District of North Carolina ("the Western District of North Carolina") for being a felon in possession of a firearm on September 27, 2006, in violation of 18 U.S.C. § 922(g). *See United States v. Derrick Louis Freeman*, II, No.1:07-CR-31-MKR (W.D.N.C.)

(3) **April 19, 2007**: the Western District of North Carolina issued a federal writ of *habeas corpus ad prosequendum* directing Freeman to appear at a preliminary hearing in that federal criminal proceeding on May 9, 2007. *See* W.D.N.C. Docket Sheet, Entry No. 3.

(4) **May 8, 2007**: Freeman was in the custody of North Carolina officials and was confined in the Cleveland County Jail in North Carolina; the USMS arrested Freeman on the federal charges and borrowed him from state custody. *Id.*, Clerk's Docket Entry of May 9, 2007.

(5) **October 31, 2007**: Sentencing proceedings transpired in the Western District of North Carolina, and Freeman was sentenced to (a) a forty-month term of imprisonment, and (b) a three-year term of supervised release. *Id.*, Clerk's Notation, 10/31/07.

(6) **November 13, 2007**: the "Judgment in a Criminal Case" sentencing Freeman to forty months in BOP custody and three years of supervised release was entered in the Western District of North Carolina. The federal sentence was not ordered to run concurrently with any state sentences, past or future. *Id.*, Docket Entry No. 20.

3

(7)     **November 14, 2007**: the USMS returned Freeman to the custody of the state officials in North Carolina.  *Id*. Docket Entry No. 22.

(8)     **December 6, 2007**:  The North Carolina state court imposed a fifteen month sentence on Freeman, consisting of a ten-month sentence for PWID Cocaine, and a consecutive five-month sentence for Carrying a Concealed Weapon.  On that date Freeman began serving the ten-month state sentence for PWID Cocaine.  *See* DSCC Memo., [R. 2-3, p. 1].

(9)     **February 8, 2008**:  Freeman completed service of his ten-month sentence for PWID Cocaine after receiving 242 days of jail credit, and immediately began serving a consecutive five-month sentence for Carrying a Concealed Weapon.  *Id*.

(10)    **July 1, 2008**:  Freeman completed service of his second North Carolina state sentence for Carrying a Concealed Weapon and was turned over to the custody of the USMS to begin serving his 40-month federal sentence.  *Id*.

(11)    **August 19, 2008**:  Freeman came into actual BOP custody for service of the forty-month sentence imposed by the Western District of North Carolina on November 13, 2007.  *See* W.D.N.C. Docket Sheet, Entry No. 28; *See also* DSCC Memo, R. 2-3, "Date Committed" entry.

(12)    **May 17, 2011**:  Freeman was released from BOP custody and began serving his three-year term of supervised release.  *See* www.bop.gov. ("Inmate Locator" feature as to Freeman, BOP Register No. 21989-058).

## FREEMAN'S ADMINISTRATIVE REMEDIES

In 2010, Freeman fully exhausted his claims through the BOP's three-step administrative remedy process, 28 C.F.R. §§ 542. 13-15, while he was confined in FMC-Lexington.  On April

4

15, 2010, Deborah Hickey, Warden of FMC-Lexington, denied Freeman's "Request for Administrative Remedy" stating that the time which Freeman had served in state custody between October 31, 2007, and July 1, 2008, had been applied to his state sentence, and that he could not receive double credit for that same period of time on his federal sentence under 18 U.S.C. § 3585(b). *See* Response, [R. 2-6, p. 1].

Hickey further explained that pursuant to BOP Program Statement 5880.28, *Sentence Computation Manual*, the time which Freeman spent in federal custody pursuant to the writ of *habeas corpus ad prosequendum* could not be credited toward his federal sentence because during that time he was in the primary custody of North Carolina state officials and was only secondarily in federal custody pursuant to the writ. [*Id.*]. Hickey noted that after the federal officials had "borrowed" Freeman pursuant to the writ, they returned him to state custody on November 14, 2007, so he could continue serving his state sentence. [*Id.*]. On May 14, 2010, the BOP Regional Director denied Freeman's appeal. [R 2-8].

On August 13, 2010, Harrell Watts, Administrator of the BOP's National Inmate Appeals, denied Freeman's final administrative remedy. [R. 2-10, p. 1]. Watts stated that Freeman's federal sentence could not be credited with time that had been applied to another sentence, and that under *Barden v. Keohane*, 921 F.2d 476 (3d Cir. 1991) and 18 U.S.C. § 3621(b), the BOP would not designate, *nunc pro tunc*, the North Carolina facility where he served time between October 31, 2007 and July 1, 2008, as the place where he was serving his federal sentence.

### DISCUSSION
#### 1. Ripeness of § 2241 Petition

When Freeman filed this § 2241 petition, he was confined in the Federal Medical Center, which is located in Lexington, Kentucky. As noted, Freeman was released from BOP custody

5

on May 17, 2011, but because he was incarcerated on the date he filed his § 2241 petition, he satisfies the "in custody" requirements of 28 U.S.C. § 2241, and his subsequent release does not deprive this Court of jurisdiction over his § 2241 petition. *See*, *e.g.*, *Carafas v. LaVallee*, 391 U.S. 234 (1968); *DePompei v. Ohio Adult Parole Auth.*, 999 F.2d 138, 140 (6th Cir. 1993).

The term "custody" is not limited solely to physical confinement. *Sanders v. Freeman*, 221 F.3d 846, 850-51 (6th Cir. 2000). Persons on parole, probation, bail or supervised release may be "in custody" for purposes of 28 U.S.C. §§ 2241 and 2254. *See*, *e.g.*, *Jones v. Cunningham*, 371 U.S. 236, 240-41 (1963) (parole); *Hensley v. Municipal Court*, 411 U.S. 345, 349 (1973) (bail); *McVeigh v. Smith*, 872 F.2d 725, 727 (6th Cir. 1989) (probation); *United States v. Zack*, 173 F.3d 431 (table), 1999 WL 96996 at *1 (6th Cir. February 1, 1999) (supervised release); *McClain v. Bureau of Prisons*, 9 F.3d 503, 505 (6th Cir.1993) (holding petitioner's claim to be live because "his supervised released dates [were] affected by [an] erroneous computation").

Freeman is currently serving a three-year term of supervised release which will not expire until May 17, 2014. Thus, Freeman is still "in custody" under § 2241, and his release from BOP custody on May 17, 2011, did not render his petition moot. *See Faison v. Eichenlaub*, No. 2:07-CV-11765, 2008 WL 5422761, at *2 (E.D. Mich., December 30, 2008). If the Court concludes that Freeman's claims are meritorious and that the BOP kept Freeman in custody eight months too long, he will receive an eight-month reduction on his supervised release term, which would end on September 17, 2013, instead of May 17, 2014. *See Faison*, 2008 WL 5422761, at *2; *Magnin v. Beeler*, 110 F. Supp.2d 338, 340 n. 3 (D.N.J. 2000); *Camper v. Benov*, 966 F.Supp. 951, 952 n. 1 (C.D. Cal.1997).

2. Merits of the § 2241 Petition

A. Request for Credit on Federal Sentence
between October 31, 2007, and November 14, 2007

Warden Hickey analyzed Freeman's administrative remedy request as one seeking credit for the time which he served in federal custody pursuant to a writ of *habeas corpus ad prosequendum*, but the only time at issue under that analysis was a two-week period, between October 31, 2007 (the date on which Freeman was sentenced in the Western District of North Carolina) and November 14, 2007, (the date on which the USMS returned Freeman to the custody of North Carolina officials). To the extent that Freeman seeks credit on his federal sentence for time he served in state custody in North Carolina between October 31, 2007, and November 14, 2007, Hickey correctly denied Freeman's request because he was not in the primary custody of the United States during those two weeks and because he had already received credit on his two North Carolina state sentences for that two-week period.

Under subsection (b) of Section 3585, the Attorney General, through the BOP, is granted the authority to grant a prisoner credit for pre-sentence detention. *Id*.; *United States v. Wilson*, 503 U.S. 329, 333-35 (1992); *United States v. Westmoreland*, 974 F.2d 736, 737 (6th Cir. 1992), *cert. denied*, 113 S. Ct. 1818 (1993). However, in the last line of the statute, Congress has specified that the credits are limited to time "that has not been credited against another sentence." § 3585(b). Awarding a prisoner with double credit for time credited toward another sentence is specifically prohibited by 18 U.S.C. § 3585(b).[1]

---

[1] The controlling statute provides as follows:

18 U.S.C. § 3585. Calculation of a term of imprisonment

(a) Commencement of sentence.--A sentence to a term of imprisonment commences on

7

As the DSCC Memorandum explains, Freeman began serving his first North Carolina state sentence for PWID Cocaine on December 6, 2007. Although that sentence was ordered to run for ten months, the NCDOC applied 242 days (approximately eight months) of credit to that sentence for time Freeman had already served in pre-sentence custody between April 11, 2007 and December 6, 2007. [*See* R. 2-3, p. 1]. That credit necessarily included the two-week period between October 31, 2007, and November 14, 2007. Having received those 242 days of applied credit, Freeman was then able to complete service of the ten-month PWID Cocaine sentence on February 8, 2008, or in just two months. On that same day, Freeman began serving the consecutive five-month state sentence for carrying a concealed weapon. He completed service of that sentence five months later, on July 1, 2008, the date on which he went into USMS custody to begin serving his forty-month federal sentence.

Thus, because Freeman undeniably received retroactive credit on his PWID Cocaine state sentence for the two-week period at issue, between October 31, 2007 and November 14, 2007, Freeman was not entitled to credit on his federal sentence for the same time-period. As

---

the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

(b) Credit for prior custody.--A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences–

   (1) as a result of the offense for which the sentence was imposed; or

   (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;

**that has not been credited against another sentence**.

28 U.S.C. § 3585 (emphasis added).

discussed, a federal prisoner is not entitled to "double credit" under § 3585(b) for time which has been applied to another sentence.

Further, during that two-week period, Freeman was primarily in the custody of North Carolina state officials, and was only secondarily in federal custody pursuant to a federal writ of habeas corpus ad prosequendum during that two-week period. *See* Western District of North Carolina Docket Sheet entries R. 3 and R. 22 (as to issuance and execution of writ of *habeas corpus ad prosequendum*). The fact that Freeman was in federal custody pursuant to a writ of habeas corpus *ad prosequendum* did not change his custody status because that writ is only a mechanism whereby the prisoner is "borrowed" by federal authorities, and the State retains "primary" jurisdiction over him. *Huffman v. Perez*, 230 F.3d 1358, 2000 WL 1478368 (6th Cir. September 27, 2000) (Table).

In *Huffman*, the prisoner-petitioner sought federal sentence credits for more than two years during which he was primarily in the custody of the North Carolina Department of Corrections and only secondarily in the custody of the USMS pursuant to a writ of habeas corpus *ad prosequendum*. The Sixth Circuit disagreed, finding that because Huffman had received credit on his state sentence for the period of time in which he had been held secondarily in federal custody pursuant to a writ of habeas corpus *ad prosequendum*, crediting him for the same time again would result in Huffman receiving "improper double credit." *Huffman*, 2000 WL 1478368 at *2, citing *McClain v. Bureau of Prisons*, 9 F.3d at 505. The same result occurred in *Broadwater v. Sanders*, 59 F. App'x 112, 113 (6th Cir. 2003), wherein the court concluded that because Broadwater had received credit toward his state sentence for the time period in

question, he could not receive the same credit toward his federal sentence, and that if he did, he would be receiving improper double credit. *Id*, at 113-14.

In summary, Freeman is not entitled to credit on his federal sentence for the time that was credited on his state sentence between October 31, 2007 and November 14, 2007, because doing so would also result in him receiving improper double credit, which § 3585(b) prohibits.

### B. Request for Credit on Federal Sentence under *Barden* for service between October 31, 2007 and July 1, 2008

Freeman argued that after he was sentenced in the Western District of North Carolina on October 31, 2007, he should have been taken straight into federal custody and that the USMS should not have returned him to state custody in North Carolina. He asserted that he should have been allowed to begin serving his federal sentence on October 31, 2007, the date on which it was imposed,[2] and that by returning him to state custody in North Carolina, the USMS prevented him from being able to begin serving his federal sentence for eight months, between October 31, 2007, and July 1, 2008. In other words, Freeman essentially argued that the BOP should have treated his federal sentence as running concurrently with his two state sentences that were not imposed until December 6, 2007.

Under §3585(a), a federal sentence for a term of imprisonment begins on the date the defendant is received into official federal custody, which in this case was July 2, 2008, the day after Freeman completed his two consecutive state sentences and the date on which he was turned over to the USMS to begin serving his federal sentence . Furthermore, under 18 U.S.C.

---

[2]   Although the sentencing proceeding in the Western District of North Carolina took place on October 31, 2007, the "Judgment in a Criminal Case" was not entered until November 13, 2007.

10

§ 3584, "multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently."

In this case, concurrent sentences cannot be justified for several reasons. First, the November 13, 2007, "Judgment in a Criminal Case," entered by the Western District of North Carolina, did not order Freeman's federal sentence to run concurrent either to any prior state sentences, or more importantly, to any state sentences that might be imposed in the future, nor could it have done so under *United States v. Quintero*, 157 F.3d 1038 (6th Cir. 1998).

*Quintero* established that a district court cannot specify whether a sentence will run consecutively or concurrently to another sentence that has not been entered because a federal court would have no way of knowing for sure if the state court will impose a sentence, and if so, what the terms of the state sentence would be. *Id*. at 1039. *Quintero* rests on the text of § 3584(a), which the court interpreted to "only authorize[ ] district courts to impose concurrent or consecutive sentences if the court either imposes multiple terms of imprisonment on the defendant at the same time or imposes a sentence on a defendant who is 'already subject to an undischarged term of imprisonment.'" *Id*. at 1040 (quoting § 3584(a)).

Freeman's claims on this issue are exactly the same as the petitioner in *United States v. Custard*, 230 F.3d 1360, 2000 WL 1290338 (6th Cir. September 5, 2000). State authorities arrested Custard first; federal authorities then borrowed him; the federal court imposed a sentence; and federal authorities then returned him to state custody. The state court subsequently imposed its sentence. *Id*. at *1. The Sixth Circuit held that Custard's federal sentence would not begin until he finished serving his state sentence and entered federal custody. *Id*. at *2.

11

The Sixth circuit rejected Custard's argument that *Quintero* prohibited his federal sentence from running consecutively to his later-imposed state sentence. As the *Custard* court explained, *Quintero* only prohibited the district court from specifying that its sentence would run consecutively to any yet-to-be-imposed state sentence. That is because the federal court had no way of knowing for sure if the state court was going to impose a sentence, and if so, what its terms would be. *Id*. But *Quintero* did not change the rule that the inmate's federal sentence could not commence until he left state custody and entered federal custody.

On November 13, 2007, Freeman was not subject to an undischarged term of imprisonment. On that date, he was in the primary custody of North Carolina state officials, but he was not sentenced in the North Carolina state court until about five weeks later, on December 6, 2007. The rule established in *Custard* applies to Freeman in this case.

Second, the BOP contacted the Western District of North Carolina to inquire whether Freeman's federal sentence should run concurrently to his subsequently imposed state sentences, and according to Harrell Watts, the Western District of North Carolina ". . . provided no input." *See* Watts Response, [R. 2-10]. Presumably, had the Western District of North Carolina intended Freeman's federal sentence to run concurrently with his subsequently imposed state sentences, it would have notified the BOP of its intention at that time so that Freeman's release date could be adjusted accordingly. That court's failure to do so is another signal that it intended Freeman's federal sentence to run consecutively to any subsequently imposed state sentences.

Third, concurrent sentencing was not warranted in this case because the time that Freeman spent in state custody was neither the result of his federal offense nor the result of

12

any charge for which he was arrested after committing his federal offense. *See* 18 U.S.C. § 3585(b). Freeman's federal sentences stemmed from his being a felon in possession of a firearm, but his two North Carolina state sentences imposed on December 6, 2007, stemmed from his possessing cocaine with intent to distribute and carrying a concealed weapon, criminal activity that was separate and distinct from being a felon in possession of a firearm.

Fourth, as the DSCC Memorandum explains, Freeman received 242 days of credit toward both of his two North Carolina state sentences (for PWID Cocaine and Carrying a Concealed Weapon) for the eight-month period between October 31, 2007, and July 1, 2008. Freeman would receive an unauthorized double credit if this eight-month period was also credited to his federal sentence. *See* 18 U.S.C. § 3585(b); *Wilson*, 503 U.S. at 337.

Fifth, Freeman's extensive criminal history precluded the BOP from designating, *nunc pro tunc*, the facility where he served his two North Carolina state sentences as the facility in which he served his federal sentence. A *nunc pro tunc* designation allows a prisoner's concurrent federal sentence to commence while he is still in state custody serving a state sentence. *See* 18 U.S.C. § 3621(b); *Barden v. Keohane*, 921 F.2d 476 (3d Cir. 1991).[3]

---

[3] In *Barden*, the Third Circuit held that the BOP's authority under 18 U.S.C. § 3621(b) to designate the penal institution where a federal prisoner will serve his federal sentence includes the authority to designate, *nunc pro tunc* (or "after the fact"), the state prison a defendant has served his state sentence as the place where he served his federal sentence. *Barden*, 921 F.2d at 480. The practical effect of such a designation is to grant the federal prisoner credit against his federal sentence for all of the time spent in state custody, in effect serving the two sentences concurrently. The BOP has accepted the rule of *Barden* and set forth the factors to be considered in determining whether to make such a designation in Program Statement 5160.05.

Harrell Watts analyzed Freeman's case using the various factors under § 3621(b) to determine whether a *nunc pro tunc* designation under *Barden* was appropriate.[4] Based on Freeman's lengthy criminal history, which Watts summarized in his August 13, 2010, Response, [R. 2-10, p. 1], and the fact that Freeman's federal sentence was not ordered to run concurrently with any past or future state sentences, Watts did not abuse his discretion by rejecting a *nunc pro tunc* designation of the North Carolina state facility where Freeman served his state sentences as the place where he served eight months of his federal sentence. *See* 18 U.S.C § 3621(b); *Fegans v. United States*, 506 F.3d 1101, 1105 (8th Cir. 2007).

For these reasons, the BOP properly released Freeman from its custody on May 17, 2011, instead of on September 17, 2010; Freeman's term of supervised release will terminate on May

---

[4] Title 18 U.S.C. § 3621(b) provides as follows:

(b) **Place of imprisonment**.--The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering--

(1) the resources of the facility contemplated;

(2) the nature and circumstances of the offense;

(3) the history and characteristics of the prisoner;

(4) any statement by the court that imposed the sentence--

    (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or

    (B) recommending a type of penal or correctional facility as appropriate; and

(5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

17, 2014, instead of on September 17, 2013; Freeman's § 2241 petition will be denied; his motion seeking a status report [R. 8], will be denied as moot, and this proceeding will be dismissed, with prejudice.

## CONCLUSION

Accordingly, the Court being advised, **IT IS ORDERED** as follows:

(1) Petitioner Derrick Louis Freeman's 28 U.S.C. § 2241 petition for writ of habeas corpus, [R. 2] is **DENIED**;

(2) Freeman's motion seeking a status report, [R. 8], is **DENIED** as **MOOT**;

(3) This action is **DISMISSED** from the active docket; and

(4) Judgment will be entered contemporaneously with this Memorandum Opinion and Order in favor of the Respondent, Deborah Hickey, Warden of FMC-Lexington.

This March 20, 2012.



Signed By:
*Karl S. Forester* KSF
**United States Senior Judge**